# 19-10261

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**BLAKE TAYLOR,**
Defendant-Appellant

---

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:18-CR-231-A

---

**APPELLEE'S BRIEF**

---

Erin Nealy Cox
United States Attorney

Jay Stevenson Weimer
Assistant United States Attorney
Texas Bar No. 24013727
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone:  (817) 252-5273
jay.weimer@usdoj.gov

Attorneys for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

The government does not recommend oral argument. The record is short and the issues have been thoroughly briefed by the parties. Thus, oral argument would not significantly aid the Court.

# **TABLE OF CONTENTS**

**Page**

STATEMENT REGARDING ORAL ARGUMENT.................................i

TABLE OF AUTHORITIES ...........................................................iv

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES .................................................1

STATEMENT OF THE CASE...........................................................2

    1.    Taylor robs a bank and shoots three people. ..............................2

    2.    Taylor is charged, convicted, and sentenced. ..............................5

SUMMARY OF THE ARGUMENT...........................................11

ARGUMENT AND AUTHORITIES.........................................13

    1.    The district court correctly calculated Taylor's sentencing guidelines. Even if it had not done so, any error would be harmless. ...................................................13

        A.    The district court properly imposed a 2-level role enhancement. .............................................14

            i.    The evidence supported the imposition of the 2-level role enhancement........................................14

            ii.    The district court did not err by denying Taylor's request for Wells's competency report. ...................19

        B.    The district court did not err in denying Taylor credit for acceptance of responsibility. ...........................22

            i.    Taylor did not clearly demonstrate acceptance of responsibility ......................................24

            ii.    Taylor's objection to the role enhancement was a factual objection ...................................25

ii

C.    Any error in the calculation of the guidelines was harmless. ....................................................................... 26

2.    The district court correctly denied Taylor's motion to dismiss. [Foreclosed issue.] ............................................... 34

CONCLUSION...................................................................................... 34

CERTIFICATE OF SERVICE ............................................................... 35

CERTIFICATE OF COMPLIANCE ....................................................... 35

# TABLE OF AUTHORITIES

**Federal Cases**                                                     **Page(s)**

*Jackson v. Johnson*, 194 F.3d 641 (5th Cir. 1999) ............................................. 20

*United States v. Barnett*, 587 F.2d 252 (5th Cir. 1979)...................................... 19

*United States v. Brewer*, 848 F.3d 711 (5th Cir. 2017)....................................... 34

U*nited States v. Buchanan,* 485 F.3d 274 (5th Cir. 2007)................................... 23

*United States v. Cordero*, 465 F.3d 626 (5th Cir. 2006) ...............................22, 23

*United States v. Davis*, 754 F.3d 278 (5th Cir. 2014) ........................................ 19

*United States v. Duhon*, 541 F.3d 391 (5th Cir.2008) ........................... 27, 29, 31

*United States v. Griffith*, 522 F.3d 607 (5th Cir. 2008)...................................... 14

*United States v. Ibarra-Luna*, 628 F.3d 712 (5th Cir. 2010) ..........................14, 27

*United States v. Johnson*, 619 F.3d 469 (5th Cir. 2010)..................................... 13

*United States v. Ochoa-Gomez*, 777 F.3d 278 (5th Cir. 2015).......................15, 19

*United States v. Patino-Cardenas*, 85 F.3d 1133 (5th Cir. 1996) ........................ 25

*United States v. Richardson*, 676 F.3d 491 (5th Cir. 2012)...............27, 28, 29, 31

*United States v. Rudzavice,* 586 F.3d 310 (5th Cir. 2009) .............................23, 25

*United States v. Zuniga*, 720 F.3d 587 (5th Cir. 2013) .................................15, 16

*Williams v. United States*, 503 U.S. 193 (1992)................................................ 27

iv

**Federal Statutes and Rules**

18 U.S.C. § 3231 ...................................................................................... 1

18 U.S.C. § 3742(a) .................................................................................. 1

28 U.S.C. § 1291 ...................................................................................... 1

Fed. R. App. P. 4(b) ................................................................................ 1

Fed.R.Crim.P. 52(a) .............................................................................. 27

**Federal Sentencing Guidelines**

USSG § 3E1.1, comment. (n. 1(A)) .................................................. 22, 25, 26

USSG § 3E1.1, comment (n.3) ........................................................ 22, 23

## STATEMENT OF JURISDICTION

This is a direct appeal from a sentence in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The district court entered judgment on February 24, 2019, and Taylor timely filed the notice of appeal on March 4, 2019. Fed. R. App. P. 4(b). (ROA.76, 82.)

## STATEMENT OF THE ISSUES

1.     The district court imposed a 2-level role adjustment to Taylor's guidelines. The adjustment was based both on a statement by Taylor's codefendant, and independent evidence about Taylor's conduct. Did the district court clearly err in imposing the adjustment?

2.     Taylor sought a copy of his codefendant's competency report in order to challenge his credibility. The district court reviewed the report and determined that disclosing it would invade the codefendant's privacy and would not benefit Taylor. Did the district court err in denying Taylor's motion to obtain the report?

3.     Taylor challenged the factual accuracy of his codefendant's statement and engaged in threatening conduct toward his codefendant while awaiting sentencing. As a result, the district court denied Taylor guidelines-credit for

accepting responsibility.  Did the district court clearly err in denying Taylor credit for acceptance of responsibility?

4.    The district court imposed a sentence substantially above the guideline range and explained that it did so to address the high risk that Taylor would commit additional violent crimes if given a shorter sentence.  The district court clearly stated that it would have imposed the same sentence even if Taylor had prevailed in his objections to the guidelines.  Was any error in the calculation of the guidelines harmless?

5.    Taylor moved to dismiss Count Two on the grounds that Count One was not a crime of violence that could serve as a predicate for Count Two.  The district court denied his motion.  Taylor admits that binding precedent runs contrary to his position.  This issue is foreclosed.

**STATEMENT OF THE CASE**

**1. Taylor robs a bank and shoots three people.**

On July 19, 2018, Blake Taylor and Desmond Wells walked into the Veritex Community Bank in Fort Worth, Texas.  (ROA.177.)  Both men wore dark clothing and latex gloves.  (ROA.177-78.)  One customer and ten employees were in the bank when the two men entered.  (ROA.178.)

The two men immediately went to a teller station, and Taylor drew a gun.  (ROA.178.)  Taylor ordered everyone to "get down," while Wells displayed an empty pillowcase and told the bank employees to "give me all

your money." (ROA.178.)  Just seconds later, for no apparent reason, Taylor

began shooting bank employees.  (ROA.178.)  He shot bank teller G.S. twice

in the hip and once in her leg.  (ROA.178.)  Taylor shot teller J.N. once in the

leg.  (ROA.178.)  J.N. attempted to crawl toward a row of cabinets to hide.

(ROA.178.)  Taylor then shot B.G. once in the arm and once in the torso.

(ROA.178.)  The gunshot to the torso destroyed one of B.G.'s kidneys and

damaged the other.  (ROA.178.)

After shooting three people, Taylor left the bank without obtaining any

money.  (ROA.178.)  He and Wells fled in a Fiat that was registered to Taylor

and his mother.  (ROA.178.)  Fort Worth Police Department officers obtained

a photo of the vehicle from a witness, and were able to trace it to Taylor.

(ROA.178.)  They went to Taylor's home, where they found the Fiat parked in

the driveway.  (ROA.178.)  Officers located Taylor at a nearby convenience

store and detained him for questioning.  (ROA.178.)

Later that day, FBI agents executed a search warrant at Taylor's house.

(ROA.178.)  They found a 9-millimeter handgun loaded with two rounds of

ammunition, one of which was the same brand as shell casings found at the

site of the shooting.  (ROA.178.)  The gun had been stolen.  (ROA.178.)

Agents also found dark clothing and latex gloves matching those worn by

Wells and Taylor during the robbery.  (ROA.178.)  The gloves and dark

3

clothing had been thrown into a trash bin in the house. (ROA.178.) Agents also discovered several other firearms and packages of ammunition in the house. (ROA.178.)

Taylor agreed to be interviewed, but initially denied involvement in the robbery and shooting. (ROA.178.) He claimed that he loaned his car to someone else to use that morning. (ROA.178.) While he was being interviewed, Taylor attempted to delete text messages from his phone. (ROA.178.) Agents, however, were able to recover the messages and found that Taylor had been discussing the robbery and shooting with one of his contacts. (ROA.178.)

Agents informed Taylor that they had recovered a 9-millimeter pistol from his house. (ROA.179.) At that point, Taylor admitted that "we did it," and told officers that he was "ready to go to jail." (ROA.179.) He explained that he and Wells robbed the bank because they were "broke," but also began citing demonic influences, which caused the agents to move the interview to a safer location. (ROA.179.) Although Taylor confessed to playing a role in the robbery, he lied about critical facts. Taylor claimed that Wells went into the bank first and shot a 9-millimeter pistol during the robbery. (ROA.179.)

Wells was arrested the following day. (ROA.179.) Wells confessed to the robbery and told officers that Taylor had approached him and asked him to

help rob a bank. (ROA.179.) Wells explained that on the morning of the robbery, Taylor arrived at Wells's home in a Fiat to pick him up. (ROA.179.) They then drove back to Taylor's house, where Taylor retrieved dark clothing and latex gloves for them to use during the robbery. (ROA.179.) Taylor gave Wells instructions about what to do in the bank: Wells was to carry a bag and demand "hundreds, fifties, and twenties." (ROA.179.) Wells told officers that he did not carry a weapon. (ROA.179.)

Wells recalled that when they entered the bank, he demanded money from the teller, but then heard gunshots and saw an employee fall to the ground. (ROA.179.) Wells feared for his own safety since Taylor was firing a gun nearby. (ROA.179.) Wells fled, and Taylor followed. (ROA.179.) They got into Taylor's car and removed the dark clothing and gloves they had been wearing during the robbery. (ROA.179.) Taylor drove Wells back to Wells's home and left him there. (ROA.179.)

### 2. Taylor is charged, convicted, and sentenced.

Taylor was charged by indictment with one count of attempted bank robbery in violation of 18 U.S.C. 2113(a) and (d), and one count of discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (ROA.22.) Taylor moved to dismiss Count Two, arguing that the bank robbery charged in Count One was not a "crime of

5

violence," and could not, therefore, serve as a predicate for the charge in Count Two. (ROA.37-38.) Taylor conceded, however, that his argument was foreclosed by binding precedent. (ROA.38.) The district court denied his motion. (ROA.45.) Taylor pled guilty to both counts of the indictment on November 2, 2018. (ROA.50.)

The Probation Office issued its presentence report (PSR) on December 31, 2018. (ROA.174.) The PSR applied a 2-level enhancement pursuant to USSG § 3B1.1(c) due to Taylor's role as a leader and organizer of the robbery. (ROA.182.) The PSR credited Taylor with a 3-level reduction for accepting responsibility pursuant to USSG § 3E1.1(a) and (b). But the PSR noted some facts that would mitigate against such a reduction. Specifically, a U.S. Marshal overheard Taylor threatening to attack Wells because Wells had "snitched" on him. (ROA.180.) In an addendum, the Probation Office also detailed evidence that Taylor had directed his girlfriend to post threatening messages about Wells on Taylor's Facebook page. (ROA.234.)

Taylor's resulting offense level was 27, which, combined with his Category IV criminal history, resulted in a guidelines range of 100 to 125 months for Count One. (ROA.227.)[1] Count Two carried a mandatory

---

[1] The original PSR had an arithmetic error in the calculation of the offense level. It was corrected in an addendum.

minimum 10-year consecutive sentence and a maximum sentence of life imprisonment. (ROA.196.)

Taylor filed several objections to the PSR. (ROA.200.) Those objections included a challenge to the application of the 2-level role enhancement under USSG § 3B1.1(c). (ROA.200.) Taylor argued that the enhancement was supported only by the statement of Wells, who had "questionable competency, extensive criminal history, and a bias against [Taylor]." (ROA.200.)

The government responded that Wells's statement about the robbery was corroborated by the bank's surveillance video and evidence found at Taylor's house, lending credibility to Wells's account of the events. (ROA.222-23.) And, while the government agreed that Wells was "of questionable competency," it noted that this fact made it more likely that Taylor acted as the leader and organizer of the robbery. (ROA.223.)

Wells had, in fact, been evaluated for competency. Taylor unsuccessfully sought on two occasions to obtain a copy of Wells's competency report from the district court. (ROA.268, 273.) In its order denying Taylor's second motion, the district court explained that "the report contains substantial personal information about Wells that would not be appropriate to disclose. And, on balance, the contents of the report, if

7

considered by the court at Taylor's sentencing, would not benefit Taylor."
(ROA.275.)

On February 19, 2019, the district court informed the parties that it had
tentatively concluded that Taylor's objection to the 2-level role enhancement
was "without merit." (ROA.67.) The court also announced its tentative
conclusion that Taylor should not receive credit for acceptance of
responsibility due to his frivolous denial of the facts establishing his leadership
role. (ROA.67.) Finally, the court notified the parties that it had tentatively
concluded that "a sentence of imprisonment significantly above the top of the
advisory guideline imprisonment range would be appropriate in order for the
factors the court is to take into account in sentencing under 18 U.S.C.
§ 3553(a) to be properly considered." (ROA.67.) The court invited the parties
to address its tentative conclusions at sentencing. (ROA.67.)

At sentencing, Taylor persisted in his objection to the 2-level role
enhancement, but offered no evidence in support of the objection. (ROA.121.)
Instead, he argued that Wells was an unreliable witness and that his account of
the robbery could not be trusted. (ROA.123.) The district court rejected
Taylor's argument, finding that evidence derived from surveillance footage and
the search of Taylor's house was sufficient to support the role enhancement
even without the statement from Wells. (ROA.125-26.) The court also found

that Wells's statement was credible. (ROA.126-27.) The court specifically addressed Taylor's argument about Wells's mental incompetence and found that his disability would not necessarily bear on his truthfulness. (ROA.126-127.)

Taylor also objected to the tentative finding that he should not receive credit for acceptance of responsibility. (ROA.123-24.) He argued that his objection to the role enhancement was a purely legal one that did not dispute any facts. (ROA.123.) The government, however, noted that there were reasons other than Taylor's objections to deny him credit for acceptance of responsibility. (ROA.124.) Taylor had threatened to attack Wells due to Wells's cooperation with the government. (ROA.124.) In addition, there was strong evidence that Taylor had directed his girlfriend to post part of his PSR on Facebook in order to show that Wells had cooperated with law enforcement. (ROA.124, 234.) The posts on Taylor's Facebook page also criticized Wells for "snitching." (ROA.234.) The court found that Taylor had not clearly demonstrated that he had accepted responsibility under USSG § 3E1.1. (ROA.127.)

The court determined that Taylor's total offense level was 30, that his Criminal History Category was IV, and that the guidelines imprisonment range as to Count One was 135 to 168 months. (ROA.128.) Count Two

carried a mandatory minimum consecutive 10-year term of imprisonment, and a maximum of life.  (ROA.128.)

Both parties offered argument on the subject of sentencing.  Taylor argued for a within-guidelines sentencing, claiming that he was a young man who was unlikely to reoffend when he was released from prison.  (ROA.130-31.)  The government argued for a sentence "significantly above the guidelines" due to the terrible nature of the crime and the severe impact it had on the employees that Taylor shot.  (ROA.146-48.)  The government also noted that Taylor had a long and violent criminal history that made him a high-risk for committing future offenses.  (ROA.148.)

After considering arguments, hearing from some of the bank employees that Taylor shot, and watching video of the shooting, the court imposed its sentence.  (ROA.134-50.)  The court sentenced Taylor to 180 months on Count One, and 360 months on Count Two, with the sentences to run consecutively, for a total 540-month term of imprisonment.  (ROA.150.)  The court explained its decision to vary substantially from the guideline range by pointing to the high risk that Taylor would commit future violent crimes "if he were to be released after serving no more than the guideline range sentenc[e]."  (ROA.150-51.)

The district court, aware of Taylor's objections to its rulings and the impact those objections would have had on the guidelines, announced in clear and certain terms that it would have imposed the same sentence even if it had used Taylor's preferred guidelines calculation:

> And I might add that the sentence I've determined should be imposed is the same sentence I would be imposing even if the Court had not denied acceptance of responsibility of the reduction based on that, and even if the Court had sustained the objection relative to the leadership role. Those factors are really irrelevant to the decision the Court's made as to what the sentence should be in this case.

(ROA.149-50.) The Court emphasized that it had "taken into account all the factors the Court should consider in sentencing under Section 3553(a)," and that its sentence was necessary to prevent Taylor from committing future violent crimes. (ROA.152.)

## SUMMARY OF THE ARGUMENT

1.    Taylor argues that the district court erroneously imposed a 2-level role adjustment to his guidelines. Taylor's codefendant told agents that Taylor recruited him to commit the robbery, provided the weapons and gear used during the offense, instructed him about what to say at the bank, and unilaterally decided to escalate the crime from a robbery to a shooting. Independent evidence, including surveillance footage and physical evidence found at Taylor's home, corroborated the statement. That evidence also

11

provided a separate basis for applying the enhancement. The district court did not clearly err in finding that Taylor played a leadership role in the offense.

2.    Taylor's codefendant was evaluated for mental competency prior to his trial. Taylor sought a copy of his codefendant's competency report in order to challenge his credibility. The district court reviewed the report and determined that disclosing it would invade the codefendant's privacy and would not benefit Taylor. The district court based its decision about the credibility of the codefendant's statement on independent corroborating evidence. The district court did not err in denying Taylor's motion for a copy of the competency report.

3.    Taylor claims the district court clearly erred when it denied him credit for accepting responsibility.  Taylor had the burden of proving that he had accepted responsibility and failed to do so. Taylor challenged the factual accuracy of his codefendant's statement even though it had been corroborated by independent evidence. And Taylor engaged in threatening conduct toward his codefendant while awaiting sentencing. The district court did not abuse its broad discretion in determining that Taylor should not receive credit for acceptance of responsibility.

4.    Taylor claims that any error in the calculation of his guidelines range should result in a resentencing. But any such error would be harmless. The

district court imposed a sentence substantially above the guideline range and explained that it did so to address the high risk that Taylor would commit additional violent crimes if given a shorter sentence. The district court clearly and explicitly stated that it would have imposed the same sentence even if Taylor had prevailed in all of his objections to the guidelines. Accordingly, any error was harmless.

5.     Taylor moved to dismiss Count Two on the grounds that Count One was not a crime of violence that could serve as a predicate offense for Count Two. The district court denied his motion. Taylor admits that binding precedent runs contrary to his position and concedes that the issue is foreclosed.

<u>**ARGUMENT AND AUTHORITIES**</u>

1. **The district court correctly calculated Taylor's sentencing guidelines. Even if it had not done so, any error would be harmless.**

<u>**Standard of Review**</u>

Taylor preserved error by objecting to the district court's application of a 2-level role enhancement and its failure to award him credit for the acceptance of responsibility. When error is preserved, "this court reviews the district court's interpretation and application of the Guidelines *de novo* and its factual findings for clear error." *United States v. Johnson*, 619 F.3d 469, 472 (5th Cir. 2010). Unless a factual finding is implausible in light of the record as a whole,

13

it is not clearly erroneous. *United States v. Griffith*, 522 F.3d 607, 611–12 (5th Cir. 2008).

The erroneous imposition of a guidelines enhancement is harmless error if the proponent of the sentence can show "(1) that the district court would have imposed the same sentence had it not made the error and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010).

## Discussion

### A.   The district court properly imposed a 2-level role enhancement.

#### i.   The evidence supported the imposition of the 2-level role enhancement.

Taylor argues that the district court should not have applied a 2-level role adjustment because the adjustment was based on a statement by Wells, who was not a credible witness. Taylor's argument fails both because Wells's credibility was established by facts corroborating his statement and because there were independent reasons to apply the enhancement.

The sentencing guidelines provide for adjustments of between 2 and 4 levels if a defendant acted as an organizer, leader, manager, or supervisor. USSG § 3B1.1. The degree of the adjustment depends on the scope of the criminal activity and the extent of the defendant's role in the offense. USSG § 3B1.1(a) and (b) apply only if the criminal activity "involved five or more

14

participants or was otherwise extensive." Subsection (a) imposes a 4-level enhancement if, under those circumstances, the defendant was "an organizer or leader." Subsection (b) applies in the same circumstances, but when the defendant was only "a manager or supervisor." 3B1.1(c) is the least of the role enhancements and triggers a 2-level adjustment if a defendant "was an organizer, leader, manager, or supervisor in any criminal activity other than described in [subsections] (a) or (b)." In determining whether to apply a role enhancement, the district court should consider: (1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4). "Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. § 3B1.1(c) is a finding of fact reviewed for clear error." *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015).

Taylor's conduct clearly qualified him for a role adjustment under USSG § 3B1.1(c). The situation Wells described is very similar to that in *United States v. Zuniga*, 720 F.3d 587, 589-90 (5th Cir. 2013). There, this Court upheld the

15

application of a 3B1.1(c) enhancement when a defendant recruited a co-conspirator to commit a robbery, gave orders to other robbers, picked up a fellow robber and drove to the site of the robbery, supplied the weapons, and pointed a gun at a child victim during the robbery. *Id.* at 589. Here, Wells stated that Taylor "repeatedly asked him to assist in robbing a bank;" picked Wells up from his home on the morning of the robbery in Taylor's car; supplied the dark clothing and gloves they used during the robbery; "explained the robbery plan to Wells," and told him what to do during the robbery; supplied the gun used during the offense; and unilaterally decided to shoot three tellers. (ROA.179.) These facts plainly establish that Taylor exercised a leadership role in the offense sufficient to trigger Section 3B1.1(c).

Indeed, even Taylor does not claim that Wells's assertions are insufficient to trigger the role adjustment. Instead, he claims only that Wells was an unreliable witness and that the district court erred in crediting his statement. *See* Brief at 9; (ROA.123.) But, his only grounds for making that claim are that Wells was adjudicated incompetent to stand trial at some point after he gave his statement. Brief at 9; (ROA.123.) As the district court noted, the determination that Wells was incompetent to stand trial does not necessarily have "any significance to whether or not he would be telling the truth about the facts that determine the leadership role." (ROA.127.) Wells's

16

credibility was established by the fact that his statement was thoroughly corroborated by independent evidence.

Wells said that Taylor provided dark clothing and latex gloves for them to wear during the robbery. (ROA.179.) The two men did, in fact, wear dark clothes and latex gloves during the robbery. (ROA.178.) Wells claimed that Taylor gave him a bag and told him to demand money from the bank employees. (ROA.179.) Wells did, in fact, carry a pillowcase into the bank and demand money from the employees. (ROA.178.) Wells said that Taylor carried a pistol during the robbery and shot a teller. (ROA.179.) Taylor eventually admitted, in his Factual Resume, that he carried a handgun during the robbery and that he used it to shoot three bank employees. (ROA.53.) Wells said that after he and Taylor fled, they got into Taylor's car and removed the dark clothing and gloves. (ROA.179.) Taylor then dropped Wells off at his home. (ROA.179.) Agents corroborated this account when they found Taylor's car parked at Taylor's home and located dark clothing and latex gloves in a trash bin inside Taylor's house. (ROA.178.)

Wells's statement, therefore, was completely consistent with the video of the robbery and the evidence discovered by agents. It stood in stark contrast to the incredible post-arrest statement given by Taylor, who lied and claimed that Wells had fired a gun in the bank. (ROA.179.) The district court, viewing all

17

of the evidence corroborating Wells's statement, was entitled to credit Wells's account of the events.

Moreover, as the district court noted, evidence apart from Wells's statement was sufficient to support the 3B1.1(c) enhancement. Independent evidence established that Taylor drove his own vehicle to and from the robbery, that he carried the gun during the robbery, that he ordered the tellers to "get down," that he shot three tellers, and that he attempted to dispose of the evidence from the robbery. (ROA.177-78.) When evaluating the applicability of a role enhancement, the district court should consider the nature of participation in the commission of the offense, the degree of participation in planning or organizing the offense, and the nature and scope of the illegal activity. U.S.S.G. § 3B1.1, comment. (n.4). Here, even without Wells's statement, the evidence shows that Taylor played the leading role in preparing for the offense, took charge during the commission of the offense, made the decision to escalate the crime from a robbery to a shooting, and attempted to conceal the offense. Even if the district court had not credited Wells's statement, it could still appropriately apply the 2-level role adjustment.

The district court did not clearly err in deciding to credit Wells's statement because that statement was corroborated by a number of indisputable facts. And, even if the court had disregarded Wells's statement, it

18

had sufficient independent evidence to find that Taylor qualified for a 2-level role enhancement. There was, therefore, no error.

### ii. The district court did not err by denying Taylor's request for Wells's competency report.

Taylor argues that the district court erred when it denied his motions to produce a copy of Wells's competency report. But the district court, which itself reviewed the report, determined that releasing it would unfairly impose on Wells's privacy while providing no benefit to Taylor. It did not err in denying Taylor's request.

Whether a defendant played a leadership role in an offense is a factual finding. *Ochoa-Gomez*, 777 F.3d at 281. The district court is the trier-of-fact for purposes of a sentencing hearing. *United States v. Davis*, 754 F.3d 278, 285 (5th Cir. 2014). While a defendant has a right to rebut information considered in imposing a sentence, that right does not require that the sentencing hearing be transformed into a full-blown trial. *United States v. Barnett*, 587 F.2d 252, 259 (5th Cir. 1979). "It is sufficient if the sentencing judge affords the defendant an opportunity to comment on any alleged factual inaccuracy." *Id.* at 260. (internal citations omitted).

Here, Taylor raised an objection to the accuracy of Wells's statement and specifically articulated that Wells was unreliable due to his "questionable competency," among other factors. (ROA.200-201.) The district court

19

reviewed Wells's competency report, considered Taylor's arguments, and determined that "on balance, the contents of the report, if considered by the court at Taylor's sentencing, would not benefit Taylor." (ROA.275.) At sentencing, the court heard again from Taylor about Wells's mental health issues, but ruled that "I'm not sure that that has any significance to whether or not he would be telling the truth about the facts that determine the leadership role." (ROA.127.) Instead, the court explained that there was independent evidence that Taylor played a leadership role that both supported the enhancement and corroborated Wells's account of events. (ROA.125-27.) Taylor, therefore, was not deprived of any right. He was able to make his argument about Wells's credibility to a finder of fact that had already reviewed the competency report. The district court considered Taylor's arguments and all of the evidence before determining that Wells was credible.

Taylor also alleges that the district court's denial of his request to produce the competency report was a *Brady* violation. A *Brady* violation, however, only exists if the evidence that is being withheld is both favorable and material to the defense. *Jackson v. Johnson*, 194 F.3d 641, 648 (5th Cir. 1999). "Evidence is 'material' only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed." *Id*. at 649-50. Here, the district court reviewed the competency report and

determined that "on balance, the contents of the report, if considered by the court at Taylor's sentencing, would not benefit Taylor." (ROA.275.) Because the district court was the trier of fact, and itself reviewed the report, there is no probability that the result of the proceeding would have been different had the report been produced to Taylor. Moreover, the district court also had to weigh the violation of Wells's privacy that would result in the production of the report to his codefendant. The court found that "the report contains substantial personal information about Wells that would not be appropriate to disclose." (ROA.275.) Accordingly, the court did not err in declining to produce the report to Taylor.

Finally, Taylor suggests that this Court conduct an *in camera* review of the competency report: "Perhaps this Court could review the statements *in camera* to decide whether they cast Wells's reliability into doubt." Brief at 9. Such a review, however, is unnecessary. The district court already reviewed the report and determined that it was not helpful to Taylor. Further, there is ample evidence, both independent and corroborative of Wells, to support the district court's finding that Taylor acted in a leadership role. And, as explained below, even if the district court erred in imposing a role enhancement, that error was harmless. Accordingly, this Court can resolve Taylor's appeal without an *in camera* inspection of the report.

**B.    The district court did not err in denying Taylor credit for acceptance of responsibility.**

Taylor argues that this district court erred when it denied him credit for acceptance of responsibility due to his filing of a frivolous objection. Taylor contends that his objection was purely legal and did not dispute any facts, and could not, therefore, serve as the basis for the denial of credit. But Taylor bore the burden of proving that he was entitled to receive credit for accepting responsibility, and there was ample evidence that he had not done so apart from his objection. Moreover, his objection was a factual one relating to the role he played during the robbery. The district court did not clearly err in denying Taylor credit for accepting responsibility.

USSG § 3E1.1 affords a defendant the opportunity to earn a 3-level reduction if he "clearly demonstrates acceptance of responsibility for his offense." The defendant has the burden of proving entitlement to an acceptance-of-responsibility reduction. *United States v. Cordero*, 465 F.3d 626, 631 (5th Cir. 2006). A defendant's timely guilty plea prior to trial is evidence that he has accepted responsibility, but it is not dispositive. USSG § 3E1.1, comment (n.3). In order to receive credit, a defendant must also truthfully admit, or at least not falsely deny, conduct relating to the offense. USSG § 3E1.1, comment. (n. 1(A)); see also USSG § 3E1.1, comment (n. 3). And even a defendant who enters a timely guilty plea and truthfully admits his conduct is

22

"not entitled to an adjustment under [USSG § 3E1.1] as a matter of right." USSG § 3E1.1, comment (n. 3).  These factors may be "outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility."  *Id.*

A district court's decision regarding the application of the Section 3E1.1 adjustment is entitled to an exceptionally high degree of deference.  "While the district court's findings under the sentencing guidelines are generally reviewed for clear error, a determination whether a defendant is entitled to an adjustment for acceptance of responsibility is reviewed with even greater deference."  *United States v. Buchanan,* 485 F.3d 274, 287 (5th Cir. 2007).  This Court will affirm a district court's decision to deny credit under Section 3E1.1 unless that decision is without foundation.  *United States v. Rudzavice,* 586 F.3d 310, 315 (5th Cir. 2009).

### i.   Taylor did not clearly demonstrate acceptance of responsibility.

Taylor argues that the district court incorrectly denied him credit for acceptance of responsibility due to his frivolous objection to the imposition of a role enhancement.  That factual objection alone would support the denial of credit, but there were other factors that independently demonstrated that Taylor had not accepted responsibility.  For instance, on November 2, 2018, while Taylor was in custody, a United States Deputy Marshal overheard

Taylor telling another inmate that he planned to attack Wells the next time they met because Wells had "snitched" on him. (ROA.180.)

There was also evidence that Taylor directed his girlfriend to post a portion of his PSR on his Facebook page. (ROA.234.) On January 9, 2019, while Taylor was awaiting sentencing, a post was made to his Facebook account that stated "I'm supposed to be snitching on you tho but you telling on me," and included a photograph of the section of Taylor's PSR that described Wells's statement against Taylor. (ROA.234.) Although Taylor did not have access to social media, there is substantial evidence that his girlfriend was posting messages to his account at his direction. Following his arrest, Taylor's girlfriend posted multiple times to his account stating that the posts were "words from Blake." (ROA.234.) The posts were written in the first person, as though Taylor was writing and responding to questions. (ROA.234.) At one point, a post purporting to be from Taylor complained about being in prison. (ROA.234.) Another user asked "is this really Blake?" and Taylor's girlfriend posted a reply using her account that read "It's me!! I post what he tells ME." (ROA.234.) This evidence establishes that Taylor directed his girlfriend to post the PSR page revealing that Wells made a statement against him.

24

Taylor's Facebook posts, combined with the conversation that the Marshal overheard, are clear evidence that Taylor was attempting to threaten, intimidate, and seek retaliation against Wells.  On this basis alone, the district court would have been justified in denying Taylor credit for acceptance of responsibility.  *See United States v. Martinez*, 365 Fed.Appx.550, 551-52 (5th Cir. 2010) (holding that threats against a codefendant that were intended to discourage cooperation with the government were a sufficient basis for the denial of credit for acceptance of responsibility under § 3E1.1).  The district court's decision, therefore, was not "without foundation" and should be affirmed.  *Rudzavice*, 586 F.3d at 315.

### ii.    Taylor's objection to the role enhancement was a factual objection.

Taylor claims that it was error for the district court to consider his objection to the role enhancement in determining that he had not accepted responsibility.  The court's decision, however, was proper.

"A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with the acceptance of responsibility."  USSG § 3E1.1, comment. (n. 1(A)). Taylor attempts to distinguish his objection to the role enhancement by citing *United States v. Patino-Cardenas* for the proposition that a defendant can make a purely legal objection without jeopardizing his credit for acceptance of

responsibility. 85 F.3d 1133, 1136 (5th Cir. 1996). A purely legal objection, however, would stipulate that the facts in the PSR were true, but contend that those facts were insufficient to support the application of an enhancement. For instance, in *Patino-Cardenas*, the defendant "objected to the legal characterization (leadership role) given his actions; he did not, in [his written objections] or at sentencing, deny any facts stated in the PSR concerning his role." 85 F.3d at 1136. That is not what happened here. Taylor did not claim that Wells's statement was true, but insufficient to support a role enhancement. Instead, he challenged the factual accuracy of Wells's account of events. As discussed above, Wells's statement was thoroughly corroborated by independent evidence, and the district court properly credited Wells's narrative. (ROA.127.) Taylor, therefore, falsely denied and frivolously contested facts about his conduct during the offense. In doing so, he "acted in a manner inconsistent with the acceptance of responsibility," and the district court was entitled to deny him credit under Section 3E1.1. USSG § 3E1.1, comment. (n. 1(A)).

### C.   Any error in the calculation of the guidelines was harmless.

Even if the district court erred with respect to the application of the disputed guidelines provisions, the error was harmless because the district court clearly stated on the record that it would have imposed the same

sentence even if it had sustained Taylor's objections and explained in detail the independent reasoning for its sentence.

A district court commits procedural error if it miscalculates the sentencing guidelines range. *United States v. Ibarra–Luna*, 628 F.3d 712, 717 (5th Cir. 2010). However, if the error "did not affect the district court's selection of the sentence imposed," this Court will not vacate the sentence. *Williams v. United States*, 503 U.S. 193, 203 (1992); Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). A guidelines calculation error is harmless "if the district court (1) contemplated the correct Guideline range in its analysis and (2) stated that it would have imposed the same sentence even if that range applied." *United States v. Duhon*, 541 F.3d 391, 396 (5th Cir.2008). And even if a court did not consider the correct range, an error in the guidelines calculation is still harmless if the proponent of the sentence "convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012) (citing *Ibarra–Luna*, 628 F.3d at 714). In order to meet its burden, the proponent of the sentence must "point to evidence in the record that will convince this Court that the district court had a particular sentence in mind

27

and would have imposed it, notwithstanding the error." *Richardson*, 676 F.3d at 511 (internal quotations omitted).

Here, the district court considered the guideline ranges urged by Taylor. Taylor objected to the 2-level role enhancement, both in writing and at sentencing. (ROA.123, 200.) Likewise, Taylor objected to the denial of the 3-level reduction for acceptance of responsibility. (ROA.123-24.) The court was aware of the impact that Taylor's objections would have on the guidelines. Indeed, the PSR addendum that the court considered contained a calculation of the guidelines that assumed Taylor would get credit for acceptance of responsibility. (ROA.227.) Thus, the court considered the alternative guidelines that would have applied had Taylor prevailed in his objections.

And the Court announced that it would have imposed the same sentence even if Taylor's proposed guidelines range had applied:

> And I might add that the sentence I've determined should be imposed is the same sentence I would be imposing even if the Court had not denied acceptance of responsibility of the reduction based on that, and even if the Court had sustained the objection relative to the leadership role. Those factors are really irrelevant to the decision the Court's made as to what the sentence should be in this case.

(ROA.149-50.) The court's statement could not have been more clear. It announced that even if both of the disputed enhancements had been resolved in Taylor's favor, it would have imposed the same sentence. Any error in the

calculation of the guidelines, therefore, was harmless because the court "(1) contemplated the correct Guideline range in its analysis and (2) stated that it would have imposed the same sentence even if that range applied." *Duhon*, 541 F.3d at 396.

And even if the court had not considered the alternative guidelines ranges, any error would still be harmless because the record "convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *Richardson*, 676 F.3d at 511. Here, as quoted above, the district court stated in absolute terms that it would have imposed the same sentence even if Taylor had prevailed in his objections. (ROA.149-50.) And it also explained that its reason for imposing that sentence would have been the same regardless of the guidelines calculation. The court explained at length that its chief concerns were with the severity of Taylor's offense and his extensive criminal history. The court imposed a sentence of 540 months, explaining that the significant upward variance was necessary because "there is a serious risk that [Taylor] would continue to engage in his activities of the kind he's engaged in, or of a similar nature already, if he were to be released after serving no more than the guideline range sentencing." (ROA.150-51.) Indeed, the court even expressed concern that its sentence,

29

while constituting a substantial variance from the guidelines "may be conservative considering the nature of the defendant, and the defendant's conduct in the past, and the probability that the defendant would engage in inappropriate conduct of a similar kind, or perhaps worse, in the future." (ROA.150.) The court went on to emphasize its concerns about Taylor's high risk of recidivism by reading aloud from Taylor's extensive criminal history and noting that Taylor "simply has no respect for the rules of society, and that is a great deal of concern to the Court." (ROA.151-52.)

The court concluded that Taylor's criminal conduct "causes the Court to believe that there should be a sentence imposed that he will not be out into society until he's well up in years when he, hopefully, would not be engaging in similar type conduct." (ROA.152.) At the conclusion of sentencing, the district court summarized its reasoning:

> In describing the things that I considered in determining what sentence to impose, I have discussed, for the most part, his criminal conduct prior to the offense of conviction -- offenses of conviction. The offenses of conviction make almost certain what is already readily apparent that the defendant is a danger to society and will continue to be if he is free in society.

(ROA.156.) It is clear, then, that the district court's rationale for imposing its sentence was entirely independent of its rulings on Taylor's objections. The court would have imposed the same sentence had it ruled in Taylor's favor,

30

and it would have done so for the same reasons it gave at the actual sentencing.  Any error, therefore, was harmless.  *Richardson*, 676 F.3d at 511.

Despite the clarity of the record, Taylor argues that the district court's statement about its sentencing intentions should be disregarded because some district courts have imposed lower sentences at re-sentencings despite having made similar pronouncements at the original sentencing.  But the fact that district courts occasionally impose lower sentences at re-sentencings is immaterial to what those courts would have done in the first instance had a challenged enhancement not applied.  Various circumstances may have changed between the original sentencing and a resentencing that would merit reconsideration of the sentence.  For instance, a defendant's good behavior in prison, successful drug treatment, or increased expression of remorse at a second allocution might cause a court to reevaluate its sentence in light of the 18 U.S.C. § 3553(a) factors.  But the question before this Court is not whether a district court, weighing a host of new factors, might impose a different sentence at a re-sentencing.  Instead, this Court must decide whether the district court would have imposed the same sentence at the original sentencing had the contested enhancement not applied.  *See Duhon*, 541 F.3d at 396; *Richardson*, 676 F.3d at 511.  Here, as quoted above, the district court answered that question explicitly, stating that it would have imposed the same sentence

31

regardless of the outcome of Taylor's objections, and explaining in detail its concern about Taylor's criminal history. (ROA.149-152, 156.) Accordingly, any error in the calculation of the guidelines was harmless.

The court's statement that it would have imposed the same sentence for the same reasons even if Taylor had prevailed in his objections was clear and unambiguous. Taylor, however, attempts to spin this fact to his favor by arguing that the court's statement was *too* clear and unambiguous. When the court announced that an alternative application of the disputed enhancements would not have affected its sentencing decision, it explained that:

> the sentence I've determined should be imposed is the same sentence I would be imposing even if the Court had not denied acceptance of responsibility of the reduction based on that, and even if the Court had sustained the objection relative to the leadership role. Those factors are really irrelevant to the decision the Court's made as to what the sentence should be in this case.

(ROA.149-50.) Taylor seizes on the word "irrelevant" to argue that the court ignored the guidelines entirely in violation of 18 U.S.C. § 3553(a). But the court did no such thing. The court, in fact, spent a significant portion of the sentencing considering arguments about the proper calculation of the guidelines. (ROA.120-128.) After hearing from the parties, the court ruled on Taylor's objections and announced the applicable guideline range. (ROA.128.) It would be absurd, then, to believe that the district court failed to "consider" the sentencing guidelines as required by 18 U.S.C. § 3553(a).

32

Indeed, the court left no doubt on the subject, explaining that "I've taken into account all the factors the Court should consider in sentencing under Section 3553(a), and the sentence I've imposed and plan to impose, I believe, does adequately address those factors." (ROA.152.)  The court's statement that the application of the disputed enhancements were "factors [that] are really irrelevant to the decision the Court's made" is merely an acknowledgement that the other § 3553(a) factors weighed so much more heavily in its calculus that the imposition or non-imposition of those enhancements would not have changed its ultimate sentence.

Taylor's argument is little more than a clever bit of sophistry.  He seeks to effectively eliminate the harmless error rule by setting up a lose-lose scenario: If the district does not clearly state that its sentencing decision was independent of the guidelines calculation, then the harmless error rule does not apply.  But if the court is clear that it would have imposed the same sentence regardless of alternative guidelines scenarios, then it has impermissibly disregarded the guidelines.  Taylor's lose-lose scenario, however, is based on a faulty premise.  Section 3553(a) requires the district court to *consider* the guidelines, and it did so here.  But Section 3553(a) does not require the court to *follow* the guidelines, or give the guidelines any particular degree of weight in its final calculus.  Thus, a court can consider the guidelines, then impose a

sentence that varies from the guidelines based on the greater weight it affords to other sentencing factors. Taylor's argument, therefore, fails.

**2. The district court correctly denied Taylor's motion to dismiss. [Foreclosed issue.]**

Taylor argues that the district court erroneously denied his motion to dismiss Count Two on the grounds that the bank robbery charged in Count One was not a "crime of violence," and could not, therefore, serve as a predicate for a charge under 18 U.S.C. § 924(c). Taylor admits, however, that there is binding precedent in this Circuit that establishes that federal bank robbery is a crime of violence. *United States v. Brewer*, 848 F.3d 711, 716 (5th Cir. 2017). This issue is, therefore, foreclosed.

### CONCLUSION

This Court should affirm the judgment.

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*/s/ Jay Stevenson Weimer*

Jay Stevenson Weimer
Assistant United States Attorney
Texas Bar No. 24013727
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5273
jay.weimer@usdoj.gov

Attorneys for Appellee

34

# CERTIFICATE OF SERVICE

I certify that this document was served on Taylor's attorney, Matthew Wright, through the Court's ECF system on August 4, 2020, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/Jay Stevenson Weimer
Jay Stevenson Weimer
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,625 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

/s/Jay Stevenson Weimer
Jay Stevenson Weimer
Assistant United States Attorney
Date: August 4, 2020